WOLFE v WAYNE-WESTLAND COMMUNITY SCHOOLS

Docket No. 251076. Submitted June 8, 2005, at Detroit. Decided June 23, 2005, at 9:15 a.m. Leave to appeal sought.

Dennis A. Wolfe brought a class action in the Wayne Circuit Court against the Wayne-Westland Community Schools, seeking compensation and other benefits provided by MCL 380.1236 to substitute teachers for all persons presently or previously employed in the In School Suspension Program (ISS) of the defendant. The court, Susan D. Borman, J., granted summary disposition for the defendant, ruling that although the plaintiffs were substitute teachers, they had not served in the ISS position at one school for more than sixty days to qualify for the benefits described in MCL 380.1236. The plaintiffs appealed.

The Court of Appeals *held*:

The circuit court correctly granted summary disposition for the defendant but erred in determining that the ISS employees are substitute teachers. The ISS employees are not employed as substitute teachers. A substitute teacher is one that works in place of a specific regular teacher. The plaintiffs work in ISS positions, supervising suspended students and helping them with assignments, but the plaintiffs do not serve in the place of regular teachers. 1989 AACS, R 390.1143(2) defines "teaching on a substitute basis" as "teaching when the regular certificated teacher is temporarily absent." That is not what the ISS employees do. The fact that the defendant established an in-school suspension program that requires each suspended student in the program to do school work and makes an ISS employee available to assist him or her does not render the regular teacher of the student temporarily absent.

Affirmed.

SCHOOLS — TEACHERS — SUBSTITUTE TEACHERS — IN-SCHOOL SUSPENSION.

An in-school suspension program employee available outside the regular classroom to assist suspended students with their school work is not a substitute teacher for the purpose of the statute that requires that a substitute teacher who teaches in the place of a regular teacher for longer than sixty days must be granted leave

time and other privileges granted to regular teachers, including the minimum salary, for the duration of the assignment (MCL 380.1236; 1989 AACS, R 390.1143).

*Thomas F. Wieder, P.C.* (by *Thomas F. Wieder*), for the plaintiffs.

*Clark Hill PLC* (by *Robert A. Lusk, James E. Brenner,* and *Paul C. Smith*) for the defendant.

Before: TALBOT, P.J., ZAHRA and DONOFRIO, JJ.

TALBOT, P.J. In this class action involving plaintiffs' statutory employment rights, plaintiffs appeal as of right an order granting defendant's motion for summary disposition. We affirm the trial court's grant of summary disposition in favor of defendant.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, Wayne-Westland Community Schools, operates the public school system in the city of Wayne, parts of three other cities, Westland, Inkster, and Romulus, and part of Canton Township. Plaintiffs are various employees in defendant's In School Suspension (ISS) program. Their position is referred to in school documents using various titles, such as "ISS facilitator," "ISS supervisor," and "suspension room teacher," but each must be qualified as a "substitute teacher" under the program as it was adopted in 1993. The purpose of the ISS program is to keep suspended students in school and assure that they are supervised during the school day. Although each school has its own rules or description of its ISS program, in general, a student receives full credit for his or her schoolwork in the ISS program. The assignments are provided by, and eventually returned to, the student's classroom teacher.

ISS employees assist students with assignments and are encouraged to tutor the students.

Plaintiff Dennis A. Wolfe filed this action on behalf of himself and other similarly situated ISS employees. Wolfe alleged that he worked each school year, commencing in the 1995-1996 school year, as a substitute teacher in the ISS program and was compensated at the prevailing rates for a substitute teacher. Wolfe claimed entitlement to the higher salary and other benefits paid to a regular teacher pursuant to MCL 380.1236(1) of the Revised School Code (formerly the School Code), MCL 380.1 et seq., alleging that he worked in excess of sixty days in the same specific teaching assignment.

The trial court certified the class, which was defined as, "All persons presently or previously employed in the In School Suspension Program of the Wayne-Westland Community Schools who may have been employed for more than 60 days in the same assignment and who may not have been provided with the compensation and other benefits provided by M.C.L.A. 380.1236." The trial court's order identified twenty-one potential class members.

Before the class certification, Wolfe, on behalf of himself and other potential class members (plaintiffs), moved for partial summary disposition under MCR 2.116(C)(10) with respect to liability and, specifically, (1) whether ISS employees are substitute teachers within the meaning of MCL 380.1236 and (2) whether defendant had a purposeful practice of moving ISS employees between buildings before sixty days elapsed to avoid paying statutory benefits. Defendant opposed plaintiffs' motion and moved for summary disposition under MCR 2.116(I) on the grounds that (1) ISS employees were not substitute teachers for purposes of MCL 380.1236, and (2) even if ISS employees were

substitute teachers, the statute did not apply unless they worked sixty consecutive days in a single work assignment.

The trial court determined that ISS employees were substitute teachers, but MCL 380.1236(1) did not apply unless they served in the position at one school for more than sixty days. The trial court rejected defendant's claim that ISS employees did not work enough hours to count as a whole day, given that they were paid for a whole day, but it determined that the work must be consecutive, and that "absences from work," including days missed because of sickness and "intervening assignments," break up consecutiveness. The trial court granted summary disposition in favor of defendant. Plaintiffs moved for reconsideration with respect to the trial court's determination that consecutive days were required, but the trial court denied the motion.

Plaintiffs now appeal, arguing that they are entitled to the benefits provided under MCL 380.1236(1) because: (1) they were employed in the same assignments for more than sixty days and (2) they were employed as substitute teachers. We find that the trial court erred in determining that plaintiffs were employed as substitute teachers. Because this issue is dispositive in determining whether plaintiffs are entitled to benefits pursuant to MCL 380.1236(1), we do not address the issue of whether plaintiffs were employed in the same assignments for more than sixty days.

II. PLAINTIFFS WERE NOT EMPLOYED AS
"SUBSTITUTE TEACHERS" PURSUANT TO MCL 380.1236

We review de novo the grant or denial of a motion for summary disposition. *Kreiner v Fischer,* 471 Mich 109, 129; 683 NW2d 611 (2004). Questions of statutory interpretation are also reviewed de novo. *Id.*

When interpreting statutes, our primary goal is to give effect to the intent of the Legislature. *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999). In doing so, our first step is to review the language of the statute itself. *Id.* The words used by the Legislature are given their common and ordinary meaning. *Veenstra v Washtenaw Country Club,* 466 Mich 155, 160; 645 NW2d 643 (2002); MCL 8.3a. If the statutory language is unambiguous, we must presume that the Legislature intended the meaning it clearly expressed, and further construction is neither required nor permitted. *Sun Valley Foods Co v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999).

As set forth in the current version of the statute, the disputed provision states:

> Subject to subsection (3), if a *teacher* is *employed as a substitute teacher with an assignment to 1 specific teaching position,* then after 60 days of service in that assignment the teacher shall be granted for the duration of that assignment leave time and other privileges granted to regular teachers by the school district, including a salary not less than the minimum salary on the current salary schedule for that district. [MCL 380.1236(1) (emphasis added).]

Defendant does not dispute that plaintiffs are "teachers," as used in subsection 1 above, or the trial court's decision that this term does not require a properly certified or credentialed person.

Rather, plaintiffs present questions regarding how to construe the statutorily required terms of their employment and, in particular, the "substitute teacher" and "teaching position" language. Plaintiffs suggest that subsection 1 can be broadly applied to a variety of situations, while defendant argues that it requires that a particular teacher be replaced. We find no irreconcil-

able conflict or equal susceptibility of meaning that would render the statutory language ambiguous. *Mayor of Lansing v Pub Service Comm,* 470 Mich 154, 166; 680 NW2d 840 (2004).

"[S]tatutory language must be read and understood in its grammatical context . . . ." *Fluor Enterprises, Inc v Dep't of Treasury,* 265 Mich App 711, 720; 265 NW2d 711 (2005). The common and approved usage of the language is applied, absent a technical meaning or one that has acquired a peculiar and appropriate meaning in the law. MCL 8.3a. Effect must be given to the context or setting of a word in determining its meaning. *Koontz v Ameritech Services, Inc,* 466 Mich 304, 318; 645 NW2d 34 (2002).

Although determining whether a person is qualified to teach in a school plainly requires consideration of various statutory provisions, the common and approved usage of the word "teacher" is simply "a person who teaches." *Random House Webster's College Dictionary* (1997). The modifying word "substitute" has a number of meanings, but examined in the context of the setting in which a teacher is employed, the relevant definition is "a person . . . serving in place of another." *Id.* The person for whom the substitute teacher acts is further modified by the phrase "with an assignment to 1 specific teaching position."

The only specific position that could apply to the facts of this case is the ISS position in each school building. Determining whether ISS positions are teaching positions requires a consideration of the specific terms of the employment contracts for the positions. Here, there is evidence that ISS employees are expected to at least help suspended students with assignments. But even assuming that ISS positions are "specific teaching positions," ISS employees plainly are not assigned to the

positions as substitute teachers, as the phrase is commonly understood, because they do not serve in place of anyone.

The trial court adopted a strained interpretation of the phrase "substitute teacher" to conclude that ISS employees replace the student's regular teacher. The regular teacher, or perhaps a substitute teacher if the regular teacher is absent, continues in the specific teaching position. Neither the ISS program nor its employees replace any specific teaching position. It is the suspended student, not the teacher, who is absent from the classroom. The fact that defendant chose to hire ISS employees who satisfy the qualifications of a substitute teacher is not dispositive of whether they were "employed as substitute teachers with an assignment to 1 specific position" within the meaning of subsection MCL 380.1236(1).

Any doubt regarding the Legislature's intent in subsection 1 can be resolved by considering the definition of "day" in subsection 5, renumbered from subsection 3 by 1995 PA 289. The contextual setting in which words and phrases are given meaning requires that they be assigned such meaning as is in harmony with the whole statute. *Shinholster v Annapolis Hosp*, 471 Mich 540, 570; 685 NW2d 275 (2004). Here, the definition of "day," i.e., "the working day of the regular, full-time teacher for whom the substitute teacher substitutes," plainly contemplates that the substitute teacher will act in place of another, rather than work in a distinct position, as in this case.

The other authority cited by plaintiffs on appeal does not support a different result. Plaintiffs' reliance on *Detroit Federation of Teachers v Detroit Bd of Ed*, 396 Mich 220; 240 NW2d 225 (1976), is misplaced. As conceded by plaintiffs, that case was decided before the

effective date of MCL 380.1236, as established by 1976 PA 451. In *Detroit Federation of Teachers,* the defendant was following a resolution to fill all new teaching positions with emergency substitutes in regular positions (ESRPs). *Id.* at 222-223. The teacher's union filed a class action on behalf of ESRPs working without a written individual contract. The teacher's union argued that ESRPs were entitled to probationary contracts. Our Supreme Court concluded that ESRPs were entitled to written contracts under the now-repealed School Code, MCL 340.569, but the kind of contract was to be determined by agreement of the parties. *Id.* at 224. Specifically, it was covered by the collective bargaining agreement, which spelled out the possible kinds of contracts, i.e., tenured, probationary, and substitute, the teachers may receive. *Id.* at 227.

The holding in *Detroit Federation of Teachers* is not material to how the specific substitute teacher provision in MCL 380.1236 should be construed because the statute does not permit parties to spell out the terms and conditions of employment. Rather, the statute mandates certain benefits for "teachers employed as substitute teachers" when the statutory conditions are satisfied. Although the terms of plaintiffs' employment contract are relevant in applying the statute, this Court has the responsibility of interpreting and applying the law. See *Hottmann v Hottmann,* 226 Mich App 171, 179; 572 NW2d 259 (1997).

Another question raised by the parties concerns the effect of the State Board of Education administrative rules. In their appeal brief, plaintiffs correctly argue that, under a longstanding rule, a person employed in a "secondary school with instructional responsibilities shall hold a certificate, permit or vocational authorization valid for the positions to which he is assigned."

1999 AC, R 390.1105. But whether plaintiffs have instructional responsibilities as ISS employees within the meaning of this rule, and, if so, had the appropriate certificate, permit, or vocational authorization, is not at issue in this appeal.

The more significant issue addressed in the parties' appeal briefs, and the trial court's decision, is the state board's rule for substitute permits, which defines teaching on a substitute basis. The state board has long had rules governing substitute and other special permits. See 1999 AC, R 390.1141 *et seq.* In 1989, the state board modified the rule for substitute teaching permits to state:

> (1) An application for a substitute permit shall contain evidence that the candidate has completed not less than 120 semester hours of satisfactory credit in an approved teacher preparation program, which shall include a minimum of 6 semester hours of professional education credit. Persons who are currently enrolled in an approved teacher preparation program will be considered to have met the 6-semester-hour requirement.
>
> (2) A substitute permit is valid for teaching on a substitute basis for a maximum of 150 days during any school year. *Teaching on a substitute basis means teaching when the regular certificated teacher is temporarily absent.* Such permit is not valid for any regular or extended teaching assignment.
>
> (3) A substitute permit is renewable each year. [1989 AACS, R 390.1143 (emphasis added).]

Before the 1989 change, Rule 390.1143 lacked a definition of "teaching on a substitute basis." It also contained different educational requirements for a substitute permit. See 1979 AC, R 390.1143. On appeal, plaintiffs challenge the state board's authority to define "teaching on a substitute basis" on the ground that the

Legislature amended MCL 380.1233 in 1995 to specify that only ninety hours of college credit were necessary for a substitute teacher.

The state board has two sources of authority to promulgate rules. Under MCL 380.1531(17), the state board (the superintendent of public instruction, 2000 PA 497), is authorized to promulgate rules to implement regulations pertaining to its duties to issue licenses and certificates for teachers. Under MCL 388.1015, the state board is authorized to prescribe rules and regulations to carry out provisions regarding its powers and duties under MCL 388.1001 *et seq.*

Plaintiffs cite no authority to support their claim that the Legislature's action in modifying the educational requirements for a substitute teacher invalidates a promulgated rule on a different point, especially when the general rule, Rule 390.1141, mandates issuance of a permit when statutory qualifications are satisfied. A properly promulgated rule has the force of law. *Danse Corp v Madison Hts,* 466 Mich 175, 181; 644 NW2d 721 (2002). Because plaintiffs have failed to cite any authority in support of their claim that the definition in Rule 390.1143 is invalid, plaintiffs have abandoned this claim on appeal. "A party may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, or give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations deleted).

In any event, the only relevancy of the definition in Rule 390.1143 is that it reflects the state board's understanding of the phrase "teaching on a substitute basis" for the purposes of its issuance of substitute permits. The trial court apparently considered the state

board's definition, giving deference to the state board's construction of an act that it is charged to administer. But the rule at issue in this case does not attempt to construe MCL 380.1236. Further, "while an agency's construction generally deserves deference, it is not controlling and cannot be used to overcome the statute's plain meaning." *Western Michigan Univ Bd of Control v Michigan,* 455 Mich 531, 544; 565 NW2d 828 (1997). Because the statutory language in this case is clear, it is unnecessary to consider the state board's definition.

Moreover, the trial court's application of the administrative rule's "temporarily absent" language was incorrect for the same reason that the trial court misapplied the statutory language. The trial court unreasonably evaluated the regular teacher's absence from the point of view of the student suspended from the classroom. The fact that defendant established a program that requires suspended students to do school work, and makes an ISS employee available to assist him or her, does not render the regular teacher temporarily absent.

### III. CONCLUSION

We conclude that plaintiffs were not employed as substitute teachers within the meaning of MCL 380.1236(1). Because MCL 380.1236 is the only statutory provision under which plaintiffs claim entitlement to benefits, the trial court's decision to grant summary disposition in favor of defendant and dismiss the case is affirmed.

Affirmed.